## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:22-CV-00520-CRS

**JADA H.**                                                                                    **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*                                  **DEFENDANT**

### REPORT AND RECOMMENDATION

The Commissioner of Social Security ("Commissioner") denied Jada H.'s ("Claimant's") applications for child's insurance benefits and supplemental security income. Claimant now seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). (DN 1). Both parties have filed Fact and Law Summaries. (DN 15; DN 20). The District Judge has referred the case to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 14).

### I. Findings of Fact

Claimant is in her early twenties, has a high school education, and lives with her mother. (Tr. 20, 295, 317). When Claimant was 19 years old, she filed applications for child's insurance benefits and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, alleging disability beginning on January 6, 2020. (Tr. 16, 224–32). Specifically, Claimant based her claim for disability on a diagnosis of lupus. (Tr. 246).

The Social Security Administration ("SSA") denied Claimant's applications on initial review (Tr. 72–79) and again on reconsideration (Tr. 80–89). At Claimant's request, Administrative Law Judge Dwight D. Wilkerson ("ALJ Wilkerson") held a hearing on May 4, 2021. (Tr. 30–49). This hearing was conducted by telephone due to the COVID-19 pandemic. (Tr.

16). ALJ Wilkerson, vocational expert Danielle Moore, Claimant, and Claimant's attorney all participated. (Tr. 31- 33, 188).

During the hearing, Claimant testified to the following. She previously worked as a package handler for UPS and would help others load packages that weighed up to 250 pounds. (Tr. 35–36). But she stopped working for UPS in March of 2020 due to her developing lupus symptoms. (Tr. 35). Her reported symptoms include pain in her feet and hands, difficulty standing up, and break outs on her skin. (Tr. 37-38). Though her medications at the time of the hearing were helping with skin issues, side effects from her medication included chronic diarrhea, upset stomach, and hair loss. (Tr. 38). Some days she can get up and do things, but some days she lays in bed all day long. (Tr. 39). Even on a good day, Claimant says she cannot stand or walk for a long time. (*Id.*). Claimant reported her lupus flaring up "[m]aybe like five times" in the last year, with each flare up lasting about a week. (Tr. 41-42). She can allegedly stand for 10-15 minutes at a time, lift a gallon of milk and a case of soft drinks, and does not drive because she never took the time to get her driver's license. (Tr. 42).

ALJ Wilkerson issued an unfavorable decision on July 9, 2021. (Tr. 13–24). In doing so, ALJ Wilkerson applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since her alleged onset date of January 6, 2020. (Tr. 18). Second, Claimant suffers from the severe impairment of systemic lupus erythematosus ("SLE"). (Tr. 19). Third, Claimant's conditions do not meet or medically equal the severity of a listed impairment from 20 C.F.R. § 404, Subpt. P, App'x 1. (*Id.*). Between the third and fourth steps, ALJ Wilkerson

2

determined Claimant has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> [N]o climbing of ladders, ropes, and scaffolding; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; frequent but not constant reaching, handling, fingering, and feeling; and would miss one day of work per month.

(Tr. 19–22). Fourth, ALJ Wilkerson found Claimant is unable to perform her past relevant work. (Tr. 22). Lastly, ALJ Wilkerson found, despite the RFC restrictions, Claimant could still perform a significant number of jobs in the national economy. (Tr. 23). Based on this evaluation, ALJ Wilkerson found Claimant was not disabled under the regulations from her protective filing date through the date of decision. (Tr. 24).

Claimant appealed ALJ Wilkerson's decision. (Tr. 221-22). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Wilkerson's decision. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th

Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III. Conclusions of Law

#### A. Finding No. 5 Residual Functional Capacity (RFC) Determination

Claimant raises several challenges relating to ALJ Wilkerson's RFC determination. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

Claimant takes issue with ALJ Wilkerson's assessment of the opinion evidence of record. (DN 15, at PageID # 1192-94). Claimant further asserts the ALJ did not adequately explain why her subjective statements as to the severity of her flareups were inconsistent with the objective record evidence. (*Id.* at PageID # 1191-92). ALJ Wilkerson also, according to Claimant, provided no explanation or objective support for his determination that Claimant would miss only one day of work per month despite evidence of debilitating flareups. (*Id.*).

4

i. ALJ Wilkerson's Evaluation of the Opinion Evidence

Claimant argues the ALJ erred in evaluating the opinion evidence in the record, including the opinion of consultative examiner Dr. Ansley Smith from March 12, 2020 (Tr. 378-79), the post-hearing interrogatory answers of Dr. Jill Silverman from May 13, 2021 (Tr. 1082-84), and the opinions of the State Agency Physicians.

The new regulations for evaluating medical opinions are applicable to Claimant's case because she filed her application after March 27, 2017. Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[1] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by referencing the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions."  20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2).  However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with

---

[1] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2021).

the claimant,[2] specialization, and other factors.[3] 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2).

The Sixth Circuit has not delineated a specific standard for determining whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations.  20 C.F.R. §§ 404.1520c(b), 416.920c(b); *see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). But district courts applying the new regulations within this Circuit consistently apply the articulation requirement literally.  *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. Aug. 13, 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation.") (emphasis in original); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the

---

[2] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[3] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).  These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

### a. ALJ Wilkerson's Evaluation of Dr. Smith's Opinion

Following her consultative examination on March 12, 2020, Dr. S. Ansley Smith determined that Claimant is "limited in her ability to stand and ambulate due to joint pain 2/2 recent diagnosis of systemic lupus erythematosus." (Tr. 379). But Dr. Smith found Claimant was not limited in her ability to sit or her ability to perform fine motor tasks. (*Id.*). Dr. Smith further concluded Claimant does not require use of an ambulatory device and that she "can perform all activities of daily living unassisted." (*Id.*). In weighing Dr. Smith's opinion, ALJ Wilkerson found her conclusions to be "somewhat persuasive," but noted that her statements "were too broad and general to offer valuable insight into specific work related limitation in functioning." (Tr. 21). Though Claimant's arguments regarding ALJ Wilkerson's treatment of Dr. Smith's opinion are somewhat muddled, it seems she is arguing that ALJ Wilkerson failed to adequately support his determination that his opinion was "somewhat persuasive" and erred in not adopting Dr. Smith's limitation as to Claimant's standing and walking. (DN 15, at PageID # 1192-94). The Commissioner asserts ALJ Wilkerson properly considered Dr. Smith's opinion pursuant to the regulations. (DN 20, at PageID # 1217).

The undersigned agrees with Claimant that ALJ Wilkerson failed to adequately explain his reasoning for finding the opinion "somewhat persuasive." By stating only that Dr. Smith's opined limitations were "too broad and general to offer valuable insight into specific work-related limitation in functioning[,]" ALJ Wilkerson failed to provide the requisite analysis on the opinion's supportability and consistency. The Commissioner hints that ALJ Wilkerson's brief analysis addressed the supportability of Dr. Smith's limitations. (DN 20, at PageID # 1217 (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1))). But the supportability inquiry concerns how relevant "the objective medical evidence and supporting explanations presented by a medical source are" in supporting the ALJ's medical opinion. 20 C.F.R. § 404.1520c(c)(1). ALJ Wilkerson did not discuss any objective medical evidence or supporting explanations from Dr. Smith in finding her opinion somewhat persuasive.[4]

Though finding Dr. Smith's opinion "somewhat persuasive," ALJ Wilkerson fails to specify which portions of the opinion he agreed or disagreed with and failed to specify which portions of the record supported his conclusion. *See Sparks v. Kijakazi*, No. 2:21-CV-102-DCP, 2022 WL 4546346, at *7 (E.D. Tenn. Sept. 28, 2022) (summarizing instances in which the ALJ failed to meet the articulation requirement). Yet, under certain circumstances, an ALJ's failure to apply the regulations properly may be considered harmless error, such as when the Commissioner "has met the goal of . . . the procedural safeguard of reasons." *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) (citing *Wilson v. Comm'r of Soc.*

---

[4] Even if ALJ Wilkerson's one-line explanation could be broadly construed as assessing the opinion's supportability, he still failed to address the consistency of Dr. Smith's opinion with the record. Consistency and supportability are distinct inquiries; simply discussing whether an opinion is internally supported does not satisfy the requirement that the ALJ also evaluate, and articulate, the consistency of the opinion's limitations with the record. *See Terhune v. Kijakazi*, No. 3:21-37-KKC, 2022 WL 2910002, at *4 (E.D. Ky. July 22, 2022) (finding ALJ completely failed to address the consistency of a nurse's opinion and only mentioned supportability).

*Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). The articulation requirement from the regulations for weighing medical opinions serves several purposes, one of which is "maintaining public confidence in the basic fairness of the administration of the Social Security program to have disappointed claimants at least understand why the government has rejected [an] opinion[.]" *Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783, at *4 (6th Cir. Sept. 3, 2021). Several district courts within the Sixth Circuit have determined that an "ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be deemed harmless error" in three instances: "(1) the medical opinion is patently deficient; (2) the ALJ adopted the medical opinion or made findings consistent with the opinion; or (3) the goal of the regulation was otherwise met." *Lorraine R. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00396, 2022 WL 4232839, at *5 (S.D. Ohio Sept. 14, 2022); *see also Greggs v. Kijakazi*, No. 1:22-cv-0041, 2023 WL 3746478, at *9 (M.D. Tenn. May 31, 2023); *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *6 (W.D. Ky. Jan. 3, 2022).

The first category of error does not apply to ALJ Wilkerson's analysis of Dr. Smith's opinion, as the medical opinion was not patently deficient. Nor did the ALJ adopt Dr. Smith's opinions or make findings consistent with them. Though Dr. Smith opined Claimant was limited in her ability to stand and ambulate, and ALJ Wilkerson found her opinion somewhat persuasive, ALJ Wilkerson did not incorporate any standing or ambulation limitations into the RFC determination. The lone question, then, is whether the goals of § 404.1520c(b)(2) were met through ALJ Wilkerson's opinion. Or stated otherwise, the Court must decide whether ALJ Wilkerson's explanation is sufficient to permit meaningful judicial review and enable the Claimant to

understand why he determined Dr. Smith's opinion was "somewhat persuasive." *See Jenna B. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00176, 2022 WL 4395682, at *9 (S.D. Ohio Sept. 23, 2022).

The Court here concludes ALJ Wilkerson's analysis of Dr. Smith's opinion meets the goals of § 404.1520c(b)(2). Dr. Smith opined that Claimant was generally limited in her ability to stand and ambulate but prescribed no specific functional restrictions in these areas. ALJ Wilkerson called attention to Dr. Smith's lack of any specific restrictions by noting her statements "were too broad and general to offer valuable insight into specific work related limitation in functioning." (Tr. 21). This analysis permits meaningful judicial review and gives Claimant a clear explanation of ALJ Wilkerson's logic. While at first glance it may appear that ALJ Wilkerson failed to delineate which of Dr. Smith's limitations he deemed somewhat persuasive, because Dr. Smith did not opine any specific functional restrictions, any resulting error was harmless.

b. ALJ Wilkerson's Evaluation of Dr. Smith's Medical Interrogatory

After Claimant's Administrative Hearing, ALJ Wilkerson submitted a "Medical Interrogatory" for physical impairment to Jill Silverman, a medical examiner. (Tr. 1071). In doing so, ALJ Wilkerson provided Dr. Silverman with "the entirety of [Claimant's] medical record." (Tr. 23, 1082-84). Dr. Silverman reviewed these records and completed the form evaluation, determining Claimant had "no limitations" resulting from her SLE. (*Id.*). Dr. Silverman also determined Claimant would likely need to miss work "1 day per month for doctors visits or treatment." (Tr. 1084). ALJ Wilkerson found Dr. Silverman's opinion was "generally persuasive" in that she is well-qualified as a board-certified rheumatologist and considered "the entirety of the medical record prior to offering [her] opinion." (Tr. 21-22). ALJ Wilkerson noted, however, that Dr. Silverman did not assign any work-related limitations in functioning to the Claimant. (Tr. 21).

10

Concluding his analysis of Dr. Silverman's opinion, ALJ Wilkerson afforded the Claimant "some additional benefit of the doubt based upon some of her subjective complaints." (Tr. 22).

Claimant argues Dr. Silverman's findings are not consistent with the ALJ's finding of a severe impairment,[5] provide no insight into her reasoning of Claimant's functioning during flare ups, and do not include a function-by-function assessment as required in determining a claimant's RFC. (DN 15, at PageID # 1194). The Commissioner responds that ALJ Wilkerson addressed the supportability and consistency factors as required by the regulations. (DN 20, at PageID # 1220). The Commissioner further highlights that Claimant is essentially arguing the ALJ erred by giving her the benefit of the doubt and crediting some of her subjective complaints, which is not a basis for remand. (*Id.*).

The Court again agrees with Claimant that ALJ Wilkerson's analysis of Dr. Silverman's interrogatory answers did not comply with the regulations. Though he discussed how Dr. Silverman is board certified and reviewed the entire record in Claimant's case, ALJ Wilkerson performed no analysis related to the consistency or supportability of her opinion. And while ALJ Wilkerson highlighted Dr. Silverman's determination that Claimant did not have any functional limitations resulting from her impairment, ALJ Wilkerson neither points to any record evidence supporting this finding nor any other medical opinion that supports this finding.

---

[5]  Claimant briefly argues that ALJ Wilkerson's Step Two determination that Claimant's SLE is a severe impairment conflicts with ALJ Wilkerson's determination that Dr. Silverman's opinion was generally persuasive even though it assessed no functional limitations. Finding a determination as severe at Step Two is widely regarded as a "*de minimis* hurdle" because "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). It follows that a step-two finding of severe impairment does not automatically correlate with specific functional limitations in an ALJ's RFC determination.

Even so, like ALJ Wilkerson's insufficient analysis of Dr. Smith's opinion, his error in evaluating Dr. Silverman's opinion is harmless. ALJ Wilkerson's analysis satisfies the third exception for harmless error because it meets the goal of the regulations and permits the claimant to understand why ALJ Wilkerson found the opinion generally persuasive. ALJ Wilkerson noted Dr. Silverman's qualifications and her review of the entire medical record.[6] Because the only limitation that Dr. Silverman assessed was that claimant would miss one day of work per month for doctor's visits or treatment, the logical conclusion is that ALJ Wilkerson meant that such limitation was generally persuasive. ALJ Wilkerson then added this persuasive limitation into Claimant's RFC. For these reasons, ALJ Wilkerson's failure to explicitly discuss the supportability or consistency or Dr. Silverman's opinion was harmless.

c. ALJ Wilkerson's Evaluation of the State Agency Physicians' Opinions

Claimant further takes issue with ALJ Wilkerson's finding the State Agency physicians' opinions to be "somewhat persuasive" because the State Agency physicians did not base their decisions on the entire record. (DN 15, at PageID # 1194). In weighing the State Agency physicians' opinions, ALJ Wilkerson found their conclusions that Claimant was capable of performing "a limited range of work at the light exertional level with occasional climbing of ladders, ropes, and scaffolding" to be "somewhat persuasive." (Tr. 21). ALJ Wilkerson additionally stated he was affording the claimant "some additional benefit of the doubt with regards to performance of postural activities and manipulative activities to the extent that the

---

[6] Claimant argues in passing that a due process issue arises from her not being advised whether "necessary background information about [her] condition" was provided to Dr. Silverman before her review. (DN 15, at PageID # 1192-93). She states it is unclear whether all exhibits from her record were submitted to Dr. Silverman. The Court disagrees. ALJ Wilkerson specifically noted in his decision that ALJ Silverman "had the opportunity to consider the entirety of the medical record prior to offering [her] opinion." (Tr. 22). And, regardless, Claimant fails to identify any legal support for this due process claim.

claimant's subjective complaints were supported by the evidence of record as a whole." (*Id.*). Essentially, ALJ Wilkerson adopted the State Agency physician's limitations of occasional climbing of ladders, ropes and scaffolding and then further limited Claimant to postural and manipulative limitations based on her supported subjective allegations.

There will "always be a gap between the time the agency experts review the record and give their opinion . . . and the time the hearing decision is issued." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) (quotation marks and citation omitted). An ALJ may rely on State Agency physician opinions so long as the decision demonstrates he or she has considered the entire record. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). The new regulations, however, require even State Agency physicians' opinions be assessed for supportability and consistency. 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative findings in your case record.").

Like his analysis of the other opinions of record, ALJ Wilkerson failed to explicitly address the supportability and consistency of the State Agency physicians' opinions. Any error, however, is again harmless, because ALJ Wilkerson ultimately crafted an RFC more restrictive than what the State Agency physicians opined by crediting Claimant's subjective allegations that were supported by the record. *See e.g. Taylor D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00045-RGJ-CHL, 2023 WL 2950140, at * 11 (W.D. Ky. Jan. 19, 2023) ("Because the ALJ imposed greater limitations in the RFC analysis she incorporated [than those opined by the State Agency physicians], the undersigned finds no procedural violation of the applicable regulations."); *Holland v. Comm'r of Soc. Sec.*, No. 2:21-cv-10364, 2022 WL 3702919, at * (E.D. Mich. Aug. 10, 2022)

(citing *Mosed v. Comm'r of Soc. Sec.*, No. 2:14-cv-14357, 2016 WL 6211288, at \*7 (E.D. Mich. Jan. 22, 2016), *report and recommendation adopted by* 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State Agency consultants is curious and unavailing.") (add'l citation omitted)). And ALJ Wilkerson's RFC analysis demonstrates he thoroughly considered all evidence in the record, including medical records submitted after the State Agency physicians provided their opinions. Because ALJ Wilkerson's evaluation of the State Agency physicians' opinions allows Claimant to understand his reasoning behind affording the opinions "somewhat persuasive[,]" the goal of the regulations has been satisfied and no error results.

d. Alleged Contradictions in ALJ Wilkerson's Evaluation of the Opinion Evidence

Claimant further alleges that contradictions exist in ALJ Wilkerson's evaluation of the opinion evidence. First, she submits the ALJ provided no reasoning for finding Dr. Silverman's opinion "generally persuasive" but then contradictorily finding Dr. Smith's stated limitation as to standing and walking only "somewhat persuasive." (DN 15, at PageID # 1193-94). According to Claimant, if Dr. Silverman had Claimant's complete records, she should have commented on Dr. Smith's opined limitation as to standing and walking. (*Id.* at PageID # 1194).

No contradiction exists here that would amount to reversible error. First, as discussed in Footnote 6 above, ALJ Wilkerson stated that Dr. Silverman reviewed Claimant's entire medical record before rendering her opinion. Even so, Dr. Silverman was not required to comment on every record from Claimant's medical file or every opined limitation from another source when completing the submitted interrogatory. And in finding Dr. Smith's opinion to be "somewhat persuasive," ALJ Wilkerson was not required to adopt Dr. Smith's general limitation as to standing

and walking. Dr. Smith did not assess any functional limitation as to walking and standing, simply noting Claimant was "limited" in these abilities. (Tr. 379). The Court's earlier finding that no reversible error amounted from ALJ Wilkerson's evaluation of Dr. Smith's opinion or Dr. Silverman's opinion applies with equal force to Claimant's contradiction argument.

Second, Claimant alleges error from ALJ Wilkerson's failure to include any narrative with citations to the record resolving the conflict between the State Agency physicians' limitations and Dr. Silverman's finding of no limitations. (*Id.*). Again, no discrepancy exists between these findings that could amount to reversible error. Review of the ALJ's decision shows that he concluded the State Agency physicians' opinions were "somewhat persuasive" because he added manipulative limitations beyond what they opined. (Tr. 21). Moreover, nothing in the State Agency physicians' finding that Claimant could perform light work with limitations contradicts ALJ Wilkerson adopting Dr. Silverman's finding that Claimant would miss one day of work per month. If anything, ALJ Wilkerson resolved the difference in Dr. Silverman's finding of no limitations, beyond missing one day of work per month, and the State Agency physicians' limitations favorably for Claimant. Once more, while ALJ Wilkerson could have more clearly articulated the relationships between the medical opinions of record, substantial evidence supports his analysis and any errors stemming from his violations of the regulations are harmless.

e. ALJ Wilkerson's Evaluation of Claimant's Ability to Function During SLE Flareups

Claimant argues ALJ Wilkerson's RFC determination emphasizes that neither the State Agency physicians, nor the consultative examiners (Dr. Smith and Dr. Silverman), addressed Claimant's ability to function during an SLE flareup. (DN 15, at PageID # 1192). The key issue, Claimant avers, is whether she can sustain work while having a flare up. She points to instances

15

of flareups and associated hand, feet, and joint pain being documented in the record and explains that evidence of her improvement following infusions does not mean she is fully recovered or that flareups will not continue to occur. (*Id.*). The Commissioner counters that the State Agency physicians considered and found limitations based on Claimant's lupus flares. (DN 20, at PageID # 1218).

A reviewing court is not meant to opine on the correctness or completeness of the medical opinions in a claimant's record. The standard of review in social security appeals is limited to ensuring the ALJ's decision was supported by substantial evidence and complies with the applicable regulations. *See Landsaw*, 803 F.2d at 213 ("our inquiry is limited to a determination of whether substantial evidence exists in the record to support the Secretary's decision and to review for any legal errors."). Whether or not any physician opined on Claimant's ability to function during SLE flareups is not a reviewable claim.

Regardless, as the Commissioner points out, the State Agency physicians explicitly considered Claimant's "lupus flares" in assessing limitations and noted she "has recently started maintaining flares w/medication." (Tr. 55-56). ALJ Wilkerson addressed evidence of Claimant's SLE flares in his RFC analysis. He discussed both Claimant's subjective allegations and the objective medical evidence of record relating to her SLE flareups. And ALJ Wilkerson gave Claimant's subjective complaints, presumably as to the limiting effects of her SLE, "some additional benefit of the doubt" by limiting her postural and manipulative activities even though no physician had opined such limitations. (Tr. 21). Because ALJ Wilkerson comprehensively reviewed the record, substantial evidence supports his analysis that the opinions were persuasive despite the physicians' opinions not including functional limitations relating to Claimant's SLE

16

Case 3:22-cv-00520-CRS-RSE   Document 22   Filed 11/28/23   Page 17 of 23 PageID #: 1243

flareups. The Court finds no error.

ii. ALJ Wilkerson's Evaluation of Claimant's Subjective Complaints

Claimant avers ALJ Wilkerson erred in evaluating the credibility of her testimony regarding the severity and functional effect of her SLE flareups. Specifically, Claimant alleges her testimony regarding her SLE flareups is consistent with and supported by the laboratory tests and clinical findings in the record. (DN 15, at PageID # 1191). According to Claimant, although ALJ Wilkerson noted her medical records revealed failed treatments and Claimant's hands either staying the same or worsening, he failed to identify any evidence contradicting her testimony of debilitating flare-ups from the onset date to the date of hearing. (DN 15, at Page ID #1188-91). The Commissioner maintains ALJ Wilkerson properly considered Claimant's subjective allegations in determining her RFC. (DN 20, at PageID # 1214).

A two-step process governs assessment of the limiting effects of a claimant's subjective symptoms. First, the ALJ determines whether an underlying medically determinable impairment exists that could reasonably be expected to produce the claimant's symptoms. *See* SSR 16-3p; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). If the first step is met, the ALJ then evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. *See* SSR 16-3p; *Rogers*, 486 F.3d at 247. In doing so, the ALJ evaluates the entire case record, including the objective medical evidence, the claimant's statements about her symptoms, statements and information provided by medical sources and other persons, and any other relevant evidence in the individual's case record. *Id.*

ALJ Wilkerson carefully recounted and considered Claimant's testimony from the hearing and found her medically determinable impairment could reasonably be expected to cause her alleged symptoms. (Tr. 20). Specifically, as to Claimant's SLE flareups, ALJ Wilkerson noted her testimony that during flareups she has difficulty performing some tasks, that on a bad day she stays in bed all day due to pain, which usually happens two to three days a week, and that on good days she can function but not normally and cannot stand or walk for a long time. (*Id.*). ALJ Wilkerson further noted Claimant's testimony that she has had five SLE flareups since May of 2020, which each lasted about a week. (*Id.*).

As to the second step, however, ALJ Wilkerson determined Claimant's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other record evidence. (*Id.*). ALJ Wilkerson then proceeded to thoroughly discuss the medical evidence of record relating to Claimant's history of SLE dating back to November of 2019. (Tr. 21). While some of the evidence cited by ALJ Wilkerson described Claimant struggling with SLE symptoms, including pain and skin rash on her cheeks, hands, and feet and efforts to regulate her symptoms with medication, much of the evidence cited by ALJ Wilkerson shows Claimant's SLE symptoms improving over time. (*Id.*). ALJ Wilkerson addressed records reflecting that Claimant appeared to be doing well in August of 2020, with the exception of her hand lesions, that she was tolerating prescribed medication in November of 2020 and her medications were again being adjusted to respond better to her symptoms, that she began receiving infusions for her SLE in late 2020, and that by March of 2021 significant improvement in her skin symptoms was noted. (*Id.*). In addition to the limitations opined by the State Agency medical consultants as to light exertional work with occasional climbing of ladders, ropes, and scaffolding,

18

ALJ Wilkerson "afforded Claimant some additional benefit of the doubt with regards to performance of postural activities and manipulative activities to the extent that the claimant's subjective complaints were supported by the evidence of record as a whole." (*Id.*).

Contrary to Claimant's contention, ALJ Wilkerson cited to evidence indicating her SLE flareups were improving but also accounted for such flareups by adding additional postural and manipulative limitations, even though no reviewing or examining physician opined such limitations. Substantial evidence supports ALJ Wilkerson's analysis of Claimant's subjective complaints.[7]

### iii. ALJ Wilkerson's Determination That Claimant Would Only Miss One Day Of Work Per Month.

Claimant's last argument relating to the RFC determination alleges ALJ Wilkerson did not provide adequate reasoning for finding Claimant would miss only one day of work per month. In apparent belief that she will miss more than one day of work per month, Claimant once more points to documented symptoms of her SLE flareups from the record. (DN 15, at PageID #1191). The Commissioner responds by emphasizing that although ALJ Wilkerson found Dr. Silverman's opinion generally persuasive and adopted her limitation of missing one day of work per month for treatment, he gave Claimant additional benefit of the doubt based on her subjective complaints and added further limitations. (DN 20, at PageID #1219).

ALJ Wilkerson's reasoning for limiting Claimant to missing one day of work per month can be gleaned from his RFC analysis. He found Dr. Silverman's interrogatory response to be generally persuasive. Again, because the only limitation that Dr. Silverman assessed was that

---

[7] To Claimant's point that her improvement in response to infusions does not guarantee that flare-ups will not occur, the Court agrees. But Plaintiff does not have to fully recover from her SLE symptoms to perform the level of work established by ALJ Wilkerson.

claimant would miss one day of work per month for doctor's visits or treatment, the logical conclusion is that ALJ Wilkerson meant that such limitation was generally persuasive. Although ALJ Wilkerson's analysis of Dr. Silverman's opinion didn't comply verbatim with the regulations, as discussed in depth above, any error was harmless. Moreover, ALJ Wilkerson considered the evidence of record, including evidence favorable and unfavorable to a finding of disability. The later evidence, specifically that she received infusions starting in late 2020 that have resulted in significant improvement in her condition adds support to ALJ Wilkerson's determination that she would only miss one day of work per month. ALJ Wilkerson's limitation of Claimant to missing one day of work each month is supported by substantial evidence and comports with the applicable regulations.[8]

## B. Finding No. 10 – Significant Jobs Existing in the National Economy

Claimant takes issue with ALJ Wilkerson's Finding No. 10, wherein he determined that considering Claimant's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Claimant can perform. (DN 15, at PageID # 1195 (citing Tr. 23)). Claimant submits that the hypothetical questions ALJ Wilkerson posed to the Vocational Expert (VE) did not accurately portray Claimant's impairments and ability to sustain work. (*Id.*). In support, Claimant again focuses on the ALJ's alleged failure to consider "uncontradicted" evidence of the frequency and length of Claimant's SLE flareups. (*Id.*).

---

[8] Claimant's Fact and Law Summary also objects to ALJ Wilkerson's Finding No. 9, arguing "[t]he Medical-Vocational rules are not applicable as the RFC determination is not supported by substantial evidence as argued in Finding No. 5 below." Because this argument is cursory and does nothing more than restate her arguments relating to ALJ Wilkerson's RFC determination, which have already been rejected by the Court, no further analysis as to Claimant's Finding No. 9 argument is necessary.

The Commissioner responds that ALJ Wilkerson properly considered the record as a whole and that because substantial evidence supports his RFC determination, substantial evidence also supports the corresponding hypothetical questions. (DN 20, at PageID # 1223). Because the ALJ's hypotheticals matched supported limitations of record he incorporated in the RFC and the VE testified that an individual with such hypothetical limitations could perform work existing in significant numbers in the national economy, ALJ Wilkerson appropriately concluded Plaintiff was capable of other work and was not disabled. (*Id.* at PageID # 1223-34).

During the administrative hearing, ALJ Wilkerson asked the VE whether jobs in the national economy exist for a hypothetical individual who is limited to light work but could never climb ladders, ropes, or scaffolds, could only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. (Tr. 43-44). The VE answered affirmatively and identified three jobs: cashier II (571,000 national jobs available), marker (129,000 national jobs available), and title router (35,000 national jobs available). (Tr. 44). ALJ Wilkerson then asked if jobs would still exist if the hypothetical individual was further limited to frequent, but not constant, reaching, handling, fingering, and feeling. (*Id.*). The VE again answered affirmatively, explaining the hypothetical individual would still be able to perform all three previously identified jobs and there would be no difference in the national numbers for these jobs. (*Id.*).

ALJ Wilkerson went on to ask another hypothetical relating to sedentary jobs with the same limitations. (Tr. 45). The VE identified four jobs falling within these restrictions but agreed with the ALJ that the numbers for these jobs were "pretty low" in the national economy. (Tr. 45-46). Finally, ALJ Wilkerson inquired about the customary tolerances for a person missing time at work. (Tr. 46). If an individual is consistently absent for more than one day per month work, the VE

explained, work would be precluded because the individual could not keep and maintain a job. (Tr. 47). ALJ Wilkerson then adopted the restrictions posed in the first hypothetical relating to light work, including the restriction of frequent, but not constant, reaching, handling, fingering, and feeling, as Claimant's RFC. (Tr. 19).

Where an ALJ relies on a vocational expert's testimony in response to a hypothetical to determine a claimant is capable of performing significant jobs, "the hypothetical question must describe the claimant in all significant, relevant respects." *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 118 (6th Cir. 2010) (citing *Felisky v. Bown*, 35 F.3d 1027, 1035-36 (6th Cir. 1994)). The Court's analysis of Claimant's RFC challenges above encapsulates that each element of ALJ Wilkerson's hypothetical (and corresponding RFC) accurately describe the claimant and is supported by substantial evidence. It bears repeating that ALJ Wilkerson recognized that while there is evidence demonstrating Claimant's SLE flareups, he also discussed additional, more recent evidence demonstrating that medication infusions were resulting in significant improvements in Claimant's SLE. (Tr. 20-21). ALJ Wilkerson also credited some of Claimant's well-supported subjective complaints by adding the restriction as to frequent but not constant reaching, handling, fingering, and feeling. (*Id.*). And, as discussed in Section A.iii. above, the limitation that Claimant will miss one day of work per month is supported by Dr. Silverman's review and by the later evidence of Claimant's infusions. For these reasons, ALJ Wilkerson's hypothetical question to the VE was not error, and his reliance on the VE's response is supported by substantial evidence in the record.

IV. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that the Commissioner's final decision be affirmed.

NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:         Counsel of Record